John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565
Fax: (619) 233-0508
jjasnoch@scott-scott.com

*Counsel for Plaintiff Kevin Tan
and the Proposed Class*

[Additional counsel on signature page.]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN TAN, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:25-cv-5777 |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| COMPASS DIVERSIFIED HOLDINGS, COMPASS GROUP DIVERSIFIED HOLDINGS LLC, COMPASS GROUP MANAGEMENT LLC, ELIAS J. SABO, RYAN J. FAULKINGHAM, STEPHEN KELLER, and PATRICK A. MACIARIELLO, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Kevin Tan ("Plaintiff") makes the following allegations, individually and on behalf of all others similarly situated, by and through Plaintiff's counsel, upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included, among other things, review and analysis of: (i) regulatory filings made by Compass Diversified Holdings ("Compass" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (ii) press releases and media reports issued and disseminated by the Company; and (iii) analyst reports, media reports, and other publicly disclosed reports and information about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff brings this federal class action under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder on behalf of all persons and entities who purchased or otherwise acquired Compass securities between March 1, 2023 and May 7, 2025, inclusive (the "Class Period") against Compass and certain of the Company's officers and executive (collectively, "Defendants").

2.      Compass is a publicly traded Delaware statutory trust, the purpose of which is to hold 100% of the limited liability interests of Defendant Compass Group Diversified Holdings LLC ("Compass LLC"). Compass and Compass LLC were formed to acquire and manage a group of small and middle-market businesses. The common stock of Compass is publicly traded on the New York Stock Exchange ("NYSE") under ticker symbol "CODI."

3.      In September 2021, Compass and Compass LLC acquired a controlling interest in Lugano Holdings, Inc. ("Lugano"), which designs, manufactures, and markets luxury jewelry.

4.      Throughout the Class Period, Defendants failed to disclose that: (i) they knew (or recklessly disregarded) that Compass's internal control over financial reporting was patently defective, resulting in the issuance of financial statements that contained material errors; (ii) Lugano had violated applicable accounting rules and acceptable industry practices with respect to its financing, accounting, and inventory practices during the Company's 2022-2024 fiscal years;

(iii) Lugano's 2022-2024 financial results had been artificially distorted by these irregularities; (iv) Compass had failed to implement effective internal controls over the Company's financial reporting; and (v) as a result of (i)-(iv) above, Compass's reported 2022-2024 financial results did not reflect the actual financial results of the Company and such reported results were materially misstated. In reality, following an internal investigation, investors learned they could not rely upon Compass's 2022-2024 financial results due to Compass's undisclosed, improper financing, accounting, and inventory practices.

## JURISDICTION AND VENUE

5. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

7. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b) and (c). The branded consumer business majority owned by the Company at issue in this case maintains its principal executive offices in this District and the preparation of materially false and misleading statements occurred in substantial part in and from this District. Certain of the Individual Defendants (defined below) also reside in this District.

8. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone and wire communications, and the facilities of a national securities exchange.

## PARTIES

9. Plaintiff Kevin Tan purchased Compass securities during the Class Period, as set forth in the certification attached hereto and incorporated by reference herein, and suffered damages as a result.

10.     Defendant Compass is a publicly traded Delaware statutory trust, the purpose of which is to hold 100% of the limited liability interests of Defendant Compass LLC.  The common stock of Compass is publicly traded on the NYSE under ticker symbol "CODI."

11.     Defendant Compass LLC is a holding company used to house the various operating companies that form the business of Compass.  Compass LLC oversees the management of the Company, its businesses, and the performance of CGM (defined below).

12.     Defendant Compass Group Management LLC ("CGM") is the manager for Compass.  Compass pays management fees to CGM, which includes the compensation paid to Compass's executive management, all of whom are employees of CGM.  Pursuant to the Management Services Agreement applicable in 2024, Compass paid CGM a quarterly management fee equal to 0.5% (2% annually) of its consolidated adjusted net assets.

13.     Defendant Elias J. Sabo ("Sabo") served as Chief Executive Officer ("CEO") and a director of Compass during the Class Period and as a regular trustee of Compass.  Defendant Sabo is also the managing member of Defendant CGM.

14.     Defendant Ryan J. Faulkingham ("Faulkingham") served as the Chief Financial Officer ("CFO") of Compass and a regular trustee of Compass during the Class Period until he stepped down, effective August 30, 2024.  Defendant Faulkingham was also an employee of Defendant CGM.

15.     Defendant Stephen Keller ("Keller") has served as CFO of Compass and a regular trustee of Compass since August 30, 2024. Defendant Keller is also an employee of Defendant CGM.

16.     Defendant Patrick A. Maciariello ("Maciariello") has severed as Chief Operating Officer ("COO") of Compass since May 2005.  Defendant Maciariello is also an employee of Defendant CGM.

17.     Defendants Sabo, Faulkingham, Keller, and Maciariello (collectively, the "Individual Defendants") and Compass LLC were each directly involved in the management and day-to-day operations of the Company at the highest levels and were privy to confidential proprietary information concerning the Company and its business, operations, and future business

prospects, as alleged herein.  In addition, the Individual Defendants and Compass LLC were involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein, were aware of, or recklessly disregarded, the false and misleading statements being issued regarding the Company and its most profitable consumer branded business, Lugano, and approved or ratified these statements, in violation of the federal securities laws.

18.     As officers and controlling persons and controlling entity of a publicly held company whose securities are registered with the SEC pursuant to the Exchange Act and trade on the NYSE, which is governed by the provisions of the federal securities laws, the Individual Defendants and Compass LLC each had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, business, and present and future business prospects.  In addition, the Individual Defendants and Compass LLC each had a duty to promptly disseminate accurate and truthful information with respect to Compass's operations, business, and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly traded securities would be based upon truthful and accurate information.  Defendants' false and misleading misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

19.     The Individual Defendants and Compass LLC, because of their positions of control and authority as officers of and/or directors of and/or the entity controlling the Company, were able to, and did, control the content of the various press releases and other public statements pertaining to the Company during the Class Period.  Each Individual Defendant and Compass LLC was provided with copies of the public filings alleged herein to be misleading before or shortly after their issuance, and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each Individual Defendant and Compass LLC is responsible for the accuracy of the public statements detailed herein and is, therefore, primarily liable for the representations contained therein.

# FACTUAL BACKGROUND

20.    Compass is a holding company and trust created for the purpose of acquiring and managing a group of small and middle-market businesses headquartered in North America.  The Company takes controlling interests in and actively manages businesses that Defendants claim: (i) operate in industries with long-term macroeconomic growth opportunities; (ii) have positive and stable cash flows; (iii) face minimal threats of technological or competitive obsolescence; and (iv) have strong management teams largely in place.  Defendants represent that Compass offers investors a unique opportunity to own a diverse group of leading middle-market businesses in the branded-consumer, industrial, and healthcare and critical outsourced services sectors that they might not otherwise have access to outside the private equity industry.

21.    On September 7, 2021, Compass announced the acquisition of a majority interest in Lugano, a designer, manufacturer, and marketer of high-end jewelry, in a deal with an enterprise value of $256 million (excluding working capital and certain other closing adjustments).  Based in Newport Beach, California, Lugano designs and manufactures unique jewelry for the luxury goods market.  Lugano conducts sales via its own retail salons as well as pop-up showrooms at Lugano-hosted or sponsored events in partnership with organizations in the equestrian, art, and philanthropic communities.  The acquisition substantially increased the management fees paid by Compass to CGM (and thus the Individual Defendants).  For example, the fees paid to CGM in 2022 (the first full year after the acquisition) were nearly $63 million, compared to approximately $35 million in 2020.

22.    In Compass's annual report on Form 10-K for its fiscal year 2022, Compass disclosed that it had repeatedly increased Lugano's intercompany credit agreement during 2022 to permit additional investment in inventory.  Compass disclosed, in relevant part:

> During the first quarter of 2022, the Lugano intercompany credit agreement was amended to increase the amount available under the revolving credit facility to permit additional investment in inventory, and amended the financial covenants to reflect the increase in the revolving credit facility. We amended the Lugano intercompany credit agreement again in the second quarter of 2022 to increase the amount in available under the revolving credit facility to permit additional investment in inventory, and amended the financial covenants to reflect the increase in the revolving credit facility. During the fourth quarter of 2022, the Lugano intercompany credit agreement was amended to allow for an additional Term A Loan.

23.    In Compass's annual report on Form 10-K for its fiscal year 2024, in the context of revenue recognition from the sale of inventory, Compass disclosed a nearly 178% increase in the amount of non-monetary exchanges at Lugano between fiscal years 2022 and 2023.   Compass disclosed, in relevant part:

> Certain sale transactions at our Lugano operating segment also include a non-monetary exchange of inventory with customers whereby the consideration received for the sale transaction has a non-cash component. The transaction price for a sale to a customer includes all cash and non-cash consideration. The non-cash consideration represents the non-monetary exchange of inventory and is measured at the fair-value of the exchanged item. The amount of non-monetary exchanges at Lugano was $154.9 million, $105.5 million and $38.0 million, respectively, in the years ended December 31, 2024, 2023 and 2022.

24.    Beginning in 2024, Lugano began purchasing inventory from a vendor who is a related party to Lugano through one of the executive officers of Lugano.  That same year, Lugano sales growth accelerated.  For the fiscal year ended December 31, 2024, net revenue attributable to Lugano grew by more than $162 million year-over-year, accounting for over 21% of the Company's total net sales – approximately double the proportion of Company sales attributable to Lugano just two years previously.  For fiscal 2024, Lugano also accounted for over 57% of Compass's total operating income, making the business the most profitable among all Company businesses.  The strong sales at Lugano contributed to nearly $75 million in 2024 management fees paid to Defendant CGM (which flowed through to the Individual Defendants), a significant increase compared to prior years.

## MATERIALLY FALSE AND MISLEADING STATEMENTS

25.    The Class Period begins on March 1, 2023, when the Company filed with the SEC its annual report on Form 10-K for its fourth quarter and full year 2022 ("2022 10-K").  The 2022 10-K claimed that "there have not been any changes in the Company's internal control over financial reporting . . . during our fourth fiscal quarter to which this Annual Report on Form 10-K relates that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting"  (citation modified).

26.    Attached to the 2022 10-K were certifications signed by Defendants Sabo and Faulkingham pursuant to the Sarbanes-Oxley Act of 2022 ("SOX"), which attested to the accuracy

and truthfulness of the statements contained within the 2022 10-K.  The 2022 10-K certifications stated in relevant part:

1. I have reviewed this annual report on Form 10-K of Compass Diversified Holdings and Compass Group Diversified Holdings LLC;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d -15(f)) for the registrant and have:

   a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

   b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

   c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

   d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

   a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

27.    The statements identified in ¶¶25-26 above were materially false and/or misleading because at the time the statements were made, the Company had massive control weaknesses over financial reporting that were not disclosed.  The Company operated with the same set of internal controls over financial reporting from at least March 2023 through the end of 2024.  As was later revealed, these controls were wholly inadequate, necessitating the restatement of CODI's financial results for its 2024 fiscal year.

28.    The 2022 10-K also claimed, among other things, that Lugano's "[n]et sales for the year ended December 31, 2022 increased approximately $76.4 million or 61.1%, to $201.5 million, compared to the corresponding year ended December 31, 2021."

29.    During the associated earnings call on March 1, 2023, a securities analyst asked whether the Company "is it still going to be heavily invested in [Lugano's inventory] because the return on the growth at Lugano [has been significant.]" In response, Defendant Sabo claimed that the Company will continue to see significant returns on its investment in Lugano's inventory.  Sabo stated in relevant part:

The answer is yes. I would tell you, and I mentioned this earlier, we have planned for a much more conservative growth plan with Lugano, and that has embedded in the overall guidance of the company. They're currently running dramatically ahead of where our growth plan would be . . . That requires us to invest capital.

What we've seen and what we experienced over the course of our ownership is that if we invest $1 in inventory, that yields about an additional dollar of revenue. And that's sort of an incremental 40% margin, right, EBITDA margin. And as long as that trend continues, and we're able to get a 40% pretax return on invested capital on that inventory, we're going to continue to do it because we can't find opportunities like that very often to deploy our capital into.

So the question will -- and what we look at on, frankly, a weekly and monthly basis is, are inventory investments continuing to yield the sales growth and are the relationships remaining consistent? And so far they are and they have over the course of our ownership. So we will continue to invest in the growth of Lugano . . . .

30.    The statements identified in ¶¶28-29 above were materially false and/or misleading when made because Defendants failed to disclose that: (i) Lugano had violated applicable accounting rules and acceptable industry practices with respect to its financing, accounting, and

inventory practices during the Company's fiscal 2022-2024; (ii) Lugano's 2022-2024 financial results had been artificially distorted by these irregularities; and (iii) Compass had failed to implement effective internal controls over the Company's financial reporting; and (iv) as a result of (i)-(iii) above, Compass's reported 2022-2024 financial results did not reflect the actual financial results of the Company and such reported results were materially misstated.

31.    On May 3, 2023, the Company filed with the SEC its quarterly report on Form 10-Q for its first quarter 2023 ("1Q23 10-Q"). The 1Q23 10-Q claimed that "there have been no material changes in our internal control over financial reporting . . . during our most recently completed fiscal quarter, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting" (citation modified).

32.    Attached to the 1Q23 10-Q were certifications signed by Defendants Sabo and Faulkingham pursuant to SOX, which attested to the accuracy and truthfulness of the statements contained within the 1Q23 10-Q. The 1Q23 SOX certifications stated in relevant part:

1.  I have reviewed this Quarterly Report on Form 10-Q of Compass Group Diversified Holdings LLC (the "registrant");

2.  Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.  Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.  The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

    a)  designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b)  designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of

financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

   c) evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

   d) disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.  The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

   a) all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

   b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

33.   The statements identified in ¶¶31-32 above were materially false and/or misleading because at the time the statements were made, the Company had massive control weaknesses over financial reporting that were not disclosed. The Company operated with the same set of internal controls over financial reporting from at least March 2023 through the end of 2024. As was later revealed, these controls were wholly inadequate, necessitating the restatement of CODI's financial results for its 2024 fiscal year.

34.   The 1Q23 10-Q also claimed, among other things, that Lugano's "[n]et sales for the quarter ended March 31, 2023 increased approximately $16.9 million, or 35.9%, to $63.9 million, compared to the corresponding quarter ended March 31, 2022."

35.   During the associated earnings call on May 3, 2023, Defendant Sabo touted Lugano's significant and continued growth rates due to Compass's investment in Lugano's inventory. Sabo stated in relevant part:

So when you think about capital allocation, I would say #1 priority within our firm is to fund the kind of high-return opportunities within our portfolio, and Lugano clearly kind of goes to the top of that list. You see that as we've been building inventory in the company, we've been generating and generated plus 30% growth

rates in that company. I think there's a lot of runway to continue to invest there and have very high return on invested capital.

36.    The statements identified in ¶¶34-35 above were materially false and/or misleading when made because Defendants failed to disclose that: (i) Lugano had violated applicable accounting rules and acceptable industry practices with respect to its financing, accounting, and inventory practices during the Company's fiscal 2022-2024; (ii) Lugano's 2022-2024 financial results had been artificially distorted by these irregularities; and (iii) Compass had failed to implement effective internal controls over the Company's financial reporting; and (iv) as a result of (i)-(iii) above, Compass's reported 2022-2024financial results did not reflect the actual financial results of the Company and such reported results were materially misstated.

37.    On August 2, 2023, the Company filed with the SEC its quarterly report on Form 10-Q for its second quarter 2023 ("2Q23 10-Q").  The 2Q23 10-Q claimed that "there have been no material changes in our internal control over financial reporting . . . during our most recently completed fiscal quarter, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting" (citation modified).

38.    Attached to the 2Q23 10-Q were certifications signed by Defendants Sabo and Faulkingham pursuant to SOX, which attested to the accuracy and truthfulness of the statements contained within the 2Q23 10-Q.  The 2Q23 SOX certifications stated in relevant part:

1.    I have reviewed this Quarterly Report on Form 10-Q of Compass Group Diversified Holdings LLC (the "registrant");

2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.    The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a)    designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated

subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b) designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c) evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation;

d) disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a) all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

39. The statements identified in ¶¶37-38 above were materially false and/or misleading because at the time the statements were made, the Company had massive control weaknesses over financial reporting that were not disclosed. The Company operated with the same set of internal controls over financial reporting from at least March 2023 through the end of 2024. As was later revealed, these controls were wholly inadequate, necessitating the restatement of CODI's financial results for its 2024 fiscal year.

40. The 2Q23 10-Q also claimed that "[n]et sales for the quarter ended June 30, 2023 increased approximately $21.9 million, or 56.0%, to $60.9 million, compared to the corresponding quarter ended June 30, 2022."

41.     During the associated earnings call on August 2, 2023, Defendant Sabo touted Lugano's accelerating growth and attributed it to Compass's investment in Lugano.  Sabo stated in relevant part:

> A lot of the limitations on the growth of this business was really predicated on investment, how much capital was available to put new salons in place? How much capital was available for inventory to create these pieces?
>
> And so when we partnered with Moti to kind of drive this business forward, we were able to solve a lot of those capital issues.  And what you've seen is an acceleration in the company's growth because of that.  We don't view this as temporary, and we don't view the kind of growth opportunity as being limited right now. And in fact, we're seeing some of the programs that we're putting in place and some of the additional tie-ins that we have around our customer segment, it's only accelerating and strengthening kind of the community effect and the purchase of kind of product ultimately and profitability of this business.

42.     The statements identified in ¶¶40-41 above were materially false and/or misleading when made because Defendants failed to disclose that: (i) Lugano had violated applicable accounting rules and acceptable industry practices with respect to its financing, accounting, and inventory practices during the Company's fiscal 2022-2024; (ii) Lugano's 2022-2024 financial results had been artificially distorted by these irregularities; and (iii) Compass had failed to implement effective internal controls over the Company's financial reporting; and (iv) as a result of (i)-(iii) above, Compass's reported 2022-2024 financial results did not reflect the actual financial results of the Company and such reported results were materially misstated.

43.     On November 2, 2023, the Company filed with the SEC its quarterly report on Form 10-Q for its third quarter 2023 ("3Q23 10-Q").  The 3Q23 10-Q claimed that "there have been no material changes in Compass's internal control over financial reporting . . . during the Company's most recently completed fiscal quarter, that have materially affected, or are reasonably likely to materially affect, Compass's internal control over financial reporting"  (citation modified).

44.     Attached to the 3Q23 10-Q were certifications signed by Defendants Sabo and Faulkingham pursuant to SOX, which attested to the accuracy and truthfulness of the statements contained within the 3Q23 10-Q.  The 3Q23 SOX certifications stated in relevant part:

> 1. I have reviewed this Quarterly Report on Form 10-Q of Compass Diversified Holdings and Compass Group Diversified Holdings LLC (each, the "registrant");

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

    a) designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b) designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c) evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d) disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a) all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

CLASS ACTION COMPLAINT

45.     The statements identified in ¶¶43-44 above were materially false and/or misleading because at the time the statements were made, the Company had massive control weaknesses over financial reporting that were not disclosed.  The Company operated with the same set of internal controls over financial reporting from at least March 2023 through the end of 2024.  As was later revealed, these controls were wholly inadequate, necessitating the restatement of CODI's financial results for its 2024 fiscal year.

46.     The 3Q23 10-Q also claimed, among other things, that Lugano's "net sales for the quarter ended September 30, 2023 increased approximately $27.6 million, or 53.9%, to $78.7 million, compared to the corresponding quarter ended September 30, 2022." (citation modified).  The 3Q23 10-Q also claimed that Lugano had "experienced strong same store sales growth as it has invested in building out its inventory as well as its sales, marketing and event staff . . . ."

47.     During the associated earnings call on November 2, 2023, Defendant Sabo touted Lugano's "torrid" growth rate during the quarter.  Sabo stated in relevant part:

> [I]f [Lugano] continues with growth rates, which frankly are just torrid at this point, look, it could get to the point where its sheer size starts to kind of exceed what our diversification sort of efforts would look like. The company is going to continue at these growth rates.

Sabo also assured investors that Lugano "is going to continue at these growth rates."

48.     Similarly, Defendant Faulkingham touted the "exceptional return" on Compass's investment in Lugano's inventory.  Faulkingham stated in relevant part:

> Year-to-date, Lugano has consumed $139 million in working capital to fund its inventory growth, which has generated exceptional return on invested capital and enabled the strong year-to-date growth rate we have experienced. We expect to continue to monetize working capital across the business in Q4 with the exception of Lugano as we continue to fund its growth objectives.

49.     The statements identified in ¶¶46-48 above were materially false and/or misleading when made because Defendants failed to disclose that: (i) Lugano had violated applicable accounting rules and acceptable industry practices with respect to its financing, accounting, and inventory practices during the Company's fiscal 2022-2024; (ii) Lugano's 2022-2024 financial results had been artificially distorted by these irregularities; and (iii) Compass had failed to implement effective internal controls over the Company's financial reporting; and (iv) as a result

of (i)-(iii) above, Compass's reported 2022-2024 financial results did not reflect the actual financial results of the Company and such reported results were materially misstated.

50.     On February 28, 2024, Compass filed with the SEC its annual report on Form 10-K for its fourth quarter and full year 2023 ("2023 10-K").  The 2023 10-K claimed that "There have not been any changes in the Company's internal control over financial reporting . . . during Compass's fourth fiscal quarter to which this Annual Report on Form 10-K relates that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting."  (citation modified).

51.     Attached to the 2023 10-K were certifications signed by Defendants Sabo and Faulkingham pursuant to SOX, which attested to the accuracy and truthfulness of the statements contained within the 2023 10-K.  The 2023 10-K SOX certifications stated in relevant part:

1.  I have reviewed this annual report on Form 10-K of Compass Diversified Holdings and Compass Group Diversified Holdings LLC;

2.  Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.  Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.  The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d -15(f)) for the registrant and have:

   a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

   b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

   c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the

effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

52.     The statements identified in ¶¶50-51 above were materially false and/or misleading because at the time the statements were made, the Company knew (or recklessly disregarded) that Compass's internal control over financial reporting was patently defective, resulting in the issuance of financial statements that contained material errors.  The Company operated with the same set of internal controls over financial reporting from at least March 2023 through the end of 2024.  As was later revealed, these controls were wholly inadequate, necessitating the restatement of CODI's financial results for its 2024 fiscal year.

53.     The 2023 10-K also claimed, among other things, that Lugano's "net sales for the year ended December 31, 2023 increased approximately $106.8 million or 53.0%, to $308.3 million, compared to the corresponding year ended December 31, 2022." (citation modified).  The 2023 10-K attributed this increase in net sales to "an increase in sales from its existing locations as it has invested in building out its inventory as well as its sales . . . ."

54.     During the associated earnings call on February 28, 2024, Defendants Sabo and Faulkingham touted Compass's increased funding of Lugano as a primary reason for Lugano's "phenomenal" growth rate.  Sabo said in relevant part:

Lugano once again delivered remarkable growth producing 53% annual revenue growth and 65% adjusted EBITDA growth.

As we have repeatedly mentioned, Lugano has created a very innovative and disruptive business model within the high jewelry industry. We continue to fund capital investment to expand the company's footprint and inventory position, realizing exceptionally strong returns on invested capital that is fueling the company's rapid growth.

55.    Later on the call, Faulkingham continued, stating in relevant part:

In addition, we prefunded Lugano with significant inventory early in the first quarter of 2024 in preparation for the London salon opening, which is planned in the second quarter, and thus, we anticipate our leverage will increase during the first and second quarter, then decline sequentially in the third and fourth quarter as a result of strong growth we expect in our subsidiary adjusted EBITDA.

\*    \*    \*

During 2023, Lugano invested $157 million in inventory to fund its growth. This inventory investment has generated an exceptional return on invested capital and enabled the strong growth Lugano has experienced.

56.    The statements identified in ¶¶53-54 above were materially false and/or misleading when made because Defendants failed to disclose that: (i) Lugano had violated applicable accounting rules and acceptable industry practices with respect to its financing, accounting, and inventory practices during the Company's fiscal 2022-2024; (ii) Lugano's 2022-2024financial results had been artificially distorted by these irregularities; and (iii) Compass had failed to implement effective internal controls over the Company's financial reporting; and (iv) as a result of (i)-(iii) above, Compass's reported 2022-2024 financial results did not reflect the actual financial results of the Company and such reported results were materially misstated.

57.    On May 1, 2024, Compass filed with the SEC a quarterly report on Form 10-Q for its first fiscal quarter of 2024.  The report stated that there had "been no material changes in Compass's internal control over financial reporting" during the quarter.  The report was signed by Defendant Faulkingham, and both he and Defendant Sabo filed certifications attesting to the report's accuracy and completeness and that the report was free from fraud and the product of effective internal controls over financial reporting.

58.    The statements identified in ¶57 above were materially false and/or misleading when made because the Company knew (or recklessly disregarded) that Compass's internal control over financial reporting was patently defective, resulting in the issuance of financial statements that contained material errors.  As described below, on May 7, 2025, following an investigation of

"irregularities in Lugano's non-CODI financing, accounting, and inventory practices," Defendants announced that Compass's "previously issued financial statements for 2024 require restatement and should no longer be relied upon." (citation modified). Compass's deficient internal financial controls remained unchanged from fourth quarter 2022 until at least Defendants' nonreliance disclosure on May 7, 2025. Therefore, Defendants failed to disclose that Compass's internal financial controls were deficient as of May 1, 2024.

59. Also on May 1, 2024, Compass issued a press release reporting its financial results for its first quarter 2024. According to the release, during the quarter Compass's net sales increased 8% year-over-year to over $524 million and its adjusted earnings increased 73% year-over-year to more than $34 million. The release stated that these favorable results were "driven by a 61% increase in Lugano net sales" to over $103 million during the quarter and adjusted quarterly EBITDA at Lugano of approximately $42 million. The release also quoted Defendant Sabo as stating that Lugano had a "'great first quarter[],'" which allowed the Company to raise its outlook.

60. During the earnings call the same day, a securities analyst asked Defendant Maciariello why the Company's "confidence level is so high" that Lugano would continue to see the "large growth rate" it had displayed for the last several quarters. In response, Maciariello attributed the continued "large growth rate" to Compass's significant investment in Lugano's inventory. Maciariello stated in relevant part:

> Compass investing significantly in inventory as you can see and as we told you. And we're more and more getting the right pieces in the right places at the right time to be sold. (citation modified).

61. The statements identified in ¶¶59-60 above were materially false and/or misleading when made because Defendants failed to disclose that: (i) Lugano had violated applicable accounting rules and acceptable industry practices with respect to its financing, accounting, and inventory practices during the Company's fiscal 2022-2024; (ii) Lugano's 2022-2024 financial results had been artificially distorted by these irregularities; and (iii) Compass had failed to implement effective internal controls over the Company's financial reporting; and (iv) as a result

of (i)-(iii) above, Compass's reported 2022-2024 financial results did not reflect the actual financial results of the Company and such reported results were materially misstated.

62. On July 31, 2024, Compass filed with the SEC a quarterly report on Form 10-Q for second quarter 2024. The report stated that there had "been no material changes in Compass's internal control over financial reporting" during the quarter. (citation modified). The report was signed by Defendant Faulkingham, and both he and Defendant Sabo filed certifications attesting to the report's accuracy and completeness and that the report was free from fraud and the product of effective internal controls over financial reporting.

63. The statements identified in ¶62 above were materially false and/or misleading when made because the Company knew (or recklessly disregarded) that Compass's internal control over financial reporting was patently defective, resulting in the issuance of financial statements that contained material errors. As described below, on May 7, 2025, following an investigation of "irregularities in Lugano's non-CODI financing, accounting, and inventory practices," (citation modified). Defendants announced that Compass's "previously issued financial statements for 2024 require restatement and should no longer be relied upon." Compass's deficient internal financial controls remained unchanged from fourth quarter 2022 until at least Defendants' nonreliance disclosure on May 7, 2025. Therefore, Defendants failed to disclose that Compass's internal financial controls were deficient as of July 31, 2024.

64. Also on July 31, 2024, Compass issued a press release reporting its financial results for its second quarter. According to the release, during the quarter Compass's net sales increased 11% year-over-year to approximately $543 million and its adjusted earnings increased 36% year-over-year to nearly $40 million. The release stated that these favorable results were due to "continued strong sales growth at Lugano," which had grown to over $99 million during the quarter, and adjusted quarterly EBITDA at Lugano of approximately $36 million.

65. During the earnings call on the same day, after touting Compass's return on its investments in Lugano's inventory, a securities analyst asked Defendant Sabo whether there was any "rule of thumb around inventory investment translating" to sales. In response, Sabo provided

a general rule, but revealed his surprise about Lugano's accelerating growth rate.  Sabo stated in relevant part:

> Yes, Matt, it's basically remained similar to where it's been. I would say we do have some additional investment we're making upfront. As our growth rate is actually accelerating, which is really remarkable given how fast this business has been growing. But as it's accelerating, it actually requires a little bit more upfront capital, especially as we're expanding our footprint. And for example, going to London, now being international, it creates some challenges about moving inventory that kind of required a little bit more investment.
>
> So in general, I would say the numbers are sticking exactly where they have been historically. And as we look at the business, I mean, part of the question that Pat said on your -- or answer Pat did for your question on modeling, I mean, the level of inventory investment also is a kind of component to modeling out how large and fast this business will grow. We've said this for 3 years, and I know it's hard for everybody and for us, too, to accept a little bit that as we put in more inventory, there is kind of demand within our network. And as we're growing that network of buyers for, there's additional demand that is there. And so we are creating more revenue opportunity with inventory investment.
>
> I think that continues and that has not slowed down. And so as we look into 2025, other than a desire to be a little bit more conservative and not get out over our skis, I would say there's nothing present right now that says this business should have a material change in sort of kind of its performance and growth outlook, it's going to be the kind of same thing. It's getting the people onboarded, getting kind of the product and the inventory built, those are sort of some of the constraints right now that we have to grow. It feels like demand still is solidly more within our network than what we're currently satisfying.

66.    The statements identified in ¶¶64-65 above were materially false and/or misleading when made because Defendants failed to disclose that: (i) Lugano had violated applicable accounting rules and acceptable industry practices with respect to its financing, accounting, and inventory practices during the Company's fiscal 2022-2024; (ii) Lugano's 2022-2024 financial results had been artificially distorted by these irregularities; and (iii) Compass had failed to implement effective internal controls over the Company's financial reporting; and (iv) as a result of (i)-(iii) above, Compass's reported 2022-2024 financial results did not reflect the actual financial results of the Company and such reported results were materially misstated.

67.    On October 30, 2024, Compass filed with the SEC a quarterly report on Form 10-Q for third quarter 2024.  The report stated that there had "been no material changes in Compass's internal control over financial reporting" during the quarter.  (citation modified).  The report was signed by Defendant Keller, and both he and Defendant Sabo filed certifications attesting to the

report's accuracy and completeness and that the report was free from fraud and the product of effective internal controls over financial reporting.

68.    The statements identified in ¶67 above were materially false and/or misleading when made because the Company knew (or recklessly disregarded) that Compass's internal control over financial reporting was patently defective, resulting in the issuance of financial statements that contained material errors.  As described below, on May 7, 2025, following an investigation of "irregularities in Lugano's non-CODI financing, accounting, and inventory practices," Defendants announced that Compass's "previously issued financial statements for 2024 require restatement and should no longer be relied upon." (citation modified).  Compass's deficient internal financial controls remained unchanged from fourth quarter 2022 until at least Defendants' nonreliance disclosure on May 7, 2025.  Therefore, Defendants failed to disclose that Compass's internal financial controls were deficient as of October 30, 2024.

69.    Also on October 30, 2024, Compass issued a press release reporting its financial results for third quarter 2024.  According to the release, during the quarter Compass's net sales increased 12% year-over-year to approximately $583 million and its adjusted earnings increased 65% year-over-year to nearly $49 million.  The release stated that these favorable results were due to "continued strong sales growth at Lugano," which had grown to approximately $119 million during the quarter, and adjusted quarterly EBITDA at Lugano of approximately $51 million.

70.    During the associated earnings call on the same day, a securities analyst asked for Defendant Maciariello to identify the "key drivers of growth" of Lugano's growth that continue to "defy expectations."  In response, Maciariello touted, among other things, Compass's investment in Lugano's inventory as a key driver.  Specifically, Maciariello stated in relevant part:

> So I'm only going to say that all salons did increase year-over-year. I'm not going to kind of touch on kind of salon by salon or area by area where the growth was. But the organic salons -- or the existing salons continue to grow and perform really well.
>
> We do continue to see a march up in sort of our average transaction value which is driving a decent chunk of growth. We also see an increase in our number of transactions per quarter. So it's a little of each, if that makes sense. And I'm sorry I can't be more in-depth than that. But it's a little of each.
>
> And really, it goes to -- we believe Lugano fundamentally has a different business model, and we believe it's disruptive. I mean we are offering more value to the

consumers than are any of Lugano's competitors. And we believe that that's important whether you're dealing with -- whether you're dealing with people of any demographic, right? And so that's important for people of the highest demographic as well.

We're creating long-term relationships and we're really allowing them to look at jewelry as more of a store of wealth. So we think it's a combination of all those things, right? And clearly, you see our investments in inventory. You need to have diamonds in order to sell diamonds, right? And that's part of what we're doing as well. And we're getting turns on that, and we're getting a very good return on our investment . . .

*    *    *

[A]s we grow and as we get more scale and as we add more capabilities and more talent in management, we're clearly buying at least as effectively, if not more effectively, number one.

71.    The statements identified in ¶¶69-70 above were materially false and/or misleading when made because Defendants failed to disclose that: (i) Lugano had violated applicable accounting rules and acceptable industry practices with respect to its financing, accounting, and inventory practices during the Company's fiscal 2022-2024; (ii) Lugano's 2022-2024 financial results had been artificially distorted by these irregularities; and (iii) Compass had failed to implement effective internal controls over the Company's financial reporting; and (iv) as a result of (i)-(iii) above, Compass's reported 2022-2024 financial results did not reflect the actual financial results of the Company and such reported results were materially misstated.

72.    On February 27, 2025, Compass filed with the SEC an annual report on Form 10-K for its fiscal year 2024.  The report stated that there had "not been any changes in the Company's internal control over financial reporting" during the fourth quarter.  The report was signed by Defendants Keller and Sabo, and both Defendants filed certifications attesting to the report's accuracy and completeness and that the report was free from fraud and the product of effective internal controls over financial reporting.

73.    The statements identified in ¶72 above were materially false and/or misleading when made because the Company knew (or recklessly disregarded) that Compass's internal control over financial reporting was patently defective, resulting in the issuance of financial statements that contained material errors.  As described below, on May 7, 2025, following an investigation of "irregularities in Lugano's non-CODI financing, accounting, and inventory practices," Defendants

announced that Compass's "previously issued financial statements for 2024 require restatement and should no longer be relied upon." (citation modified).  Compass's deficient internal financial controls remained unchanged from fourth quarter 2022 until at least Defendants' nonreliance disclosure on May 7, 2025.  Therefore, Defendants failed to disclose that Compass's internal financial controls were deficient as of February 27, 2025.

74.    Also on February 27, 2025, Compass issued a press release reporting its financial results for its fourth fiscal quarter and year ended December 31, 2024.  According to the release, during the fourth quarter Compass's net sales increased 14% year-over-year to more than $620 million and its adjusted earnings increased 29% year-over-year to over $118 million.  The release stated that these favorable results were due to "continued strong sales growth at Lugano," which had grown to nearly $150 million during the quarter, and adjusted quarterly EBITDA at Lugano of approximately $66 million.

75.    During the associated earnings call on the same day, Defendant Maciariello touted Lugano's continued "exceptional results" and attributed them to, among other things, Lugano's "disruptive business model."

76.    The statements identified in ¶¶74-75 above were materially false and/or misleading when made because Defendants failed to disclose that: (i) Lugano had violated applicable accounting rules and acceptable industry practices with respect to its financing, accounting, and inventory practices during the Company's fiscal 2022-2024; (ii) Lugano's 2022-2024financial results had been artificially distorted by these irregularities; and (iii) Compass had failed to implement effective internal controls over the Company's financial reporting; and (iv) as a result of (i)-(iii) above, Compass's reported 2022-2024 financial results did not reflect the actual financial results of the Company and such reported results were materially misstated.

## THE TRUTH EMERGES

77.    The truth began to emerge on May 7, 2025, when Compass announced that its 2024 financial statements should no longer be relied upon.  The Company stated that an ongoing investigation into Lugano had identified "irregularities in Lugano's non-CODI financing,

accounting, and inventory practices." Compass also stated that Ferder, founder and CEO of Lugano, had been terminated. The release stated in pertinent part as follows:

> Compass Diversified (NYSE: CODI) ("CODI") today disclosed nonreliance on its financial statements for fiscal 2024 amid an ongoing internal investigation into its subsidiary, Lugano Holding, Inc. It also announced that it intends to delay the filing of its first quarter 2025 Form 10-Q.

> The Audit Committee of CODI's Board of Directors promptly launched an investigation after CODI's senior leadership was made aware of concerns about how Lugano was potentially financing inventory. The investigation, led by outside counsel and a forensic accounting firm, is ongoing but has preliminarily identified irregularities in Lugano's non-CODI financing, accounting, and inventory practices. After discussing with senior leadership and investigators, the Audit Committee of CODI's Board has concluded that the previously issued financial statements for 2024 require restatement and should no longer be relied upon.

> Effective May 7, 2025, Lugano's founder and CEO, Moti Ferder, resigned from all of his positions at Lugano and will not receive any severance compensation.

78.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Compass securities, plaintiff and other Class members have suffered significant losses and damages under the federal securities laws.

79.     On this news, price of Compass's common stock declined $10.70, or nearly 62%, to close at $6.55 per share on May 8, 2025.

## CLASS ACTION ALLEGATIONS

80.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Compass securities between March 1, 2023, and May 7, 2025, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers, and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

81.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Compass's securities are actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds

or thousands of members in the proposed Class.  Millions of shares of Compass securities were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Compass or its transfer agent, and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

82.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

83.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

84.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' actions as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Compass; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

85.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

### UNDISCLOSED ADVERSE FACTS

86.    The market for Compass's securities was open, well-developed, and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures

to disclose, Compass's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class, relying upon the integrity of the market price of the Company's securities and market information relating to Compass, purchased or otherwise acquired Compass's securities and have been damaged thereby.

87. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Compass's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false, and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Compass's business, operations, and prospects as alleged herein.

88. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made, or caused to be made a series of materially false and/or misleading statements about Compass's financial well-being and prospects. These material misstatements and/or omissions had the effect of creating, in the market, an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## **LOSS CAUSATION**

89. Defendants' wrongful conduct, as alleged herein, directly, and proximately caused the economic loss suffered by Plaintiff and the Class.

90. During the Class Period, Plaintiff and the Class purchased Compass's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information

alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

91.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Compass, their control over, and/or receipt and/or modification of Compass's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Compass, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

92.     The market for Compass's securities was open, well-developed, and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Compass's securities traded at artificially inflated prices during the Class Period.  On March 8, 2024, the Company's share price closed at a Class Period-high of $24.56 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Compass's securities and market information relating to Compass, and have been damaged thereby.

93.     During the Class Period, the artificial inflation of Compass's securities was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Compass's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Compass and its business,

operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company's securities. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

94.    At all relevant times, the market for Compass's securities was an efficient market for the following reasons, among others:

(a)    Compass securities met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market.

(b)    As a regulated issuer, Compass filed periodic public reports with the SEC and/or the NYSE.

(c)    Compass regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Compass was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

95.    As a result of the foregoing, the market for Compass's securities promptly digested current information regarding Compass from all publicly available sources and reflected such information in Compass's securities price. Under these circumstances, all purchasers of Compass's securities during the Class Period suffered similar injury through their purchase of Compass's securities at artificially inflated prices and a presumption of reliance applies.

96.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse

information regarding the Company's business operations and financial prospects – information that Defendants were obligated to disclose – positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## **NO SAFE HARBOR**

97. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Compass who knew that the statement was false when made.

## **CLAIM ONE**

### **Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants**

98. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

99. During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and

other members of the Class to purchase Compass's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each defendant, took the actions set forth herein.

100. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Compass's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein, or as controlling persons as alleged below.

101. Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails and wires, engaged and participated in a continuous course of conduct to conceal adverse material information about Compass's financial well-being and prospects, as specified herein.

102. Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse nonpublic information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Compass's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Compass and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

103. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the

creation, development, and reporting of the Company's internal budgets, plans, projections, and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

104.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Compass's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

105.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Compass's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Compass's securities during the Class Period at artificially high prices and were damaged thereby.

106.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Compass was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Compass securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

107.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

108.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## CLAIM TWO

**Violation of Section 20(a) of the Exchange Act**
**Against the Individual Defendants and Compass LLC**

109.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

110.    Individual Defendants and Compass LLC acted as controlling persons of Compass within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants and Compass LLC had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  Individual Defendants and Compass LLC were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to

1  and/or shortly after these statements were issued and had the ability to prevent the issuance of the

2  statements or cause the statements to be corrected.

3      111.    In particular, Individual Defendants and Compass LLC had direct and supervisory

4  involvement in the day-to-day operations of the Company and, therefore, had the power to control

5  or influence the particular transactions, giving rise to the securities violations as alleged herein,

6  and exercised the same.

7      112.    As set forth above, Compass and Individual Defendants and Compass LLC each

8  violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

9  By virtue of their position as controlling persons, Individual Defendants and Compass LLC are

10  liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of

11  Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in

12  connection with their purchases of the Company's securities during the Class Period.

### **PRAYER FOR RELIEF**

14      WHEREFORE, Plaintiff, on Plaintiff's own behalf and on behalf of the Class, prays for

15  relief and judgement as follows:

16      A.    Determining that this action is a proper class action under Rule 23 of the Federal

17  Rules of Civil Procedure;

18      B.    Awarding compensatory damages in favor of Plaintiff and the other Class members

19  against all Defendants, jointly and severally, for all damages sustained as a result of Defendants'

20  wrongdoing, in an amount to be proven at trial, including interest thereon;

21      C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in

22  this action, including counsel fees and expert fees; and

23      D.    Such other and further relief as the Court may deem just and proper.

24

25

26

27

28

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury of all issues that may be so tried.

DATED: June 25, 2025

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

 *s/ John T. Jasnoch*
John T. Jasnoch (CA 281605)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565
Fax: (619) 233-0508
jjasnoch@scott-scott.com

Thomas L. Laughlin, IV
(*pro hac vice* forthcoming)
Nicholas S. Bruno
(*pro hac vice* forthcoming)
Matthew A. Peller
(*pro hac vice* forthcoming)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Tel.: (212) 223-6444
Fax: (212) 223-6334
tlaughlin@scott-scott.com
nbruno@scott-scott.com
mpeller@scott-scott.com

*Counsel for Plaintiff Kevin Tan*
*and the Proposed Class*

CLASS ACTION COMPLAINT

## CERTIFICATION PURSUANT TO THE FEDERAL SECURITIES LAWS

I, Kevin Tan, hereby certify that the following is true and correct to the best of my knowledge, information, and belief:

1. I have reviewed the Class Action Complaints filed in the matters captioned *Matthews v. Compass Group Diversified Holdings, LLC*, No. 8:25-cv-00981 (C.D. Cal.), *Moreno v. Compass Group Diversified Holdings, LLC*, No. 3:25-cv-00758 (D. Conn.), and *Augenbaum v. Compass Group Diversified Holdings*, No. 8:25-cv-01003 (C.D. Cal.), and authorize the filing of this Certification and a comparable Complaint (the "Complaint") and/or motion for appointment as Lead Plaintiff.

2. I am willing to serve as a representative party on behalf of the Class (as defined in the Complaint), including providing testimony at deposition and trial, if necessary.

3. During the Class Period (as defined in the Complaint), I purchased and/or sold the security that is the subject of the Complaint as set forth on the attached Schedule A.

4. I did not engage in the foregoing transactions at the direction of counsel or in order to participate in any private action arising under the Securities Act of 1933 (the "Securities Act") or the Securities Exchange Act of 1934 (the "Exchange Act").

5. During the three-year period preceding the date on which this Certification is signed, I have neither served nor sought to serve as a representative party on behalf of a class in a private action arising under the Securities Act or the Exchange Act.

6. I will not accept any payment for serving as a representative party on behalf of the Class beyond its *pro rata* share of any recovery, except for such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this ___24___ day of

June, 2025.

Kevin Tan

# Schedule A

**COMPASS DIVERSIFIED HOLDINGS**       Ticker:    **CODI**        Cusip:    **20451Q104**

Class Period: 03/01/2023 to 05/07/2025

**Kevin Tan**                                     **DATE**       **SHARES**   **PRICE**
                                  **Purchases:**   4/17/2023    500        $19.34